Case 5:15-cr-01526   Document 42   Filed in TXSD on 02/11/16   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
February 11, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VS. | § § | CRIMINAL ACTION NO. 5:15-CR-1526 |
| CECILIO ANTONIO BROCA-MARTINEZ | § § | |

## MEMORANDUM & ORDER

I.  INTRODUCTION

On February 2, 2016, the Court held a detailed evidentiary hearing on Defendant's Motion to Suppress Evidence (Doc. No. 24) and Motion to Suppress Statement (Doc. No. 25). In the Motion to Suppress Evidence, Defendant seeks to suppress essentially all evidence, verbal and physical, obtained after his vehicle was stopped by the Laredo Police Department on December 2, 2015. Defendant argues that the evidence obtained was the fruit of an unlawful seizure because officers did not have reasonable suspicion to stop his car. At the hearing, the Court found that the seizure of Defendant's vehicle was lawful, as there was reasonable suspicion to believe that Defendant failed to establish financial responsibility for his vehicle as is required by Texas law.[1] *See* Tex. Trans. Code Ann. § 601.051 (West 2011).

In the Motion to Suppress Statement, Defendant contends that there was an independent *Miranda* violation that compels suppression of the statements Defendant made to Homeland

---

[1] In addition to the reasons articulated at the hearing, *see* Hr'g Tr. 52:6-54:3, the Court notes the following authority in support of its conclusion: *United States v. Vela*, No. 2:15-CR-429, 2016 WL 305219, at *2 (S.D. Tex. Jan. 25, 2016) (finding that traffic stop for violation of § 601.051 was justified by reasonable suspicion where officer's mobile database query on the defendant's car returned an "unconfirmed" insurance status); *Short v. State*, No. 09-10-00489-CR, 2011 WL 3505611, at *3 (Tex. App. Aug. 10, 2011) (officer's experience with the vehicle database and his opinion that it was accurate contributed to the finding of reasonable suspicion that defendant violated § 601.051).

1

Security Investigations agents subsequent to the traffic stop. The Court did not rule on the alleged *Miranda* violation at the hearing, and took the issue under advisement. After considering all of the parties' arguments, the applicable law, and the record in this case, the Court now finds that Defendant's Motion to Suppress on the basis of *Miranda* must be denied.

## II.   BACKGROUND

The Defendant in this criminal action, Cecilio Antonio Broca-Martinez, has been charged with conspiracy to conceal, harbor, or shield undocumented aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(I), and with concealing, harboring, or shielding undocumented aliens for financial gain, in violation of 1324(a)(1)(A)(iii) and (v)(II). The following facts are uncontested.

On December 2, 2015, Homeland Security Investigations (HSI) Special Agent Michael Fiorita received a tip from a known source of information that undocumented immigrants were being harbored at a residence located at 3219 Zacatecas Ave. in Laredo, Texas. Agents began surveilling the location and observed two men exit the residence, enter a grey Nissan Altima, and then depart. The driver of the vehicle was Mr. Broca-Martinez. HSI agents followed the vehicle to a nearby Walmart, where they observed the two men exit the vehicle, go into the Walmart, and then return to the vehicle. Agents radioed a call to "be on the lookout" ("BOLO") for the vehicle to Laredo Police Department (LPD) officers in the area.

Shortly after hearing the BOLO, LPD Officer Juan Leal observed a vehicle that matched the BOLO traveling north on U.S. Highway 83. While maneuvering his patrol car to get behind Mr. Broca-Martinez's vehicle, Officer Leal entered the vehicle's license plate into his in-vehicle computer. The computer returned an insurance status of "unconfirmed," which, in Officer Leal's experience, indicated that the vehicle likely did not have insurance as required by law. Hr'g Tr. 68:8-24. Because the computer search revealed that the insurance status was "unconfirmed,"

Officer Leal initiated a traffic stop. During the traffic stop, Mr. Broca-Martinez gave his name to Officer Leal, admitted that he did not have a driver's license, and also admitted that he was in the United States illegally. *Id.* at 51:5-6. Upon hearing this, Officer Leal placed Mr. Broca-Martinez and Mr. Broca-Martinez's passenger in the backseat of his patrol car to await the arrival of HSI agents. Officer Leal also seized the money and cell phone that Mr. Broca-Martinez had on his person. Mr. Broca-Martinez and his passenger were not handcuffed or otherwise restrained. Agent Fiorita arrived at the scene approximately three minutes after Mr. Broca-Martinez was placed in Officer Leal's backseat. *Id.* at 42:6-10; *see also* Doc. No. 41 at 1. Agent Fiorita then interviewed Mr. Broca-Martinez about his place of residence and his immigration status. Mr. Broca-Martinez admitted to Agent Fiorita that he had come from the house at 3219 Zacatecas St. and also provided information from which Agent Fiorita determined that Mr. Broca-Martinez was "an undocumented alien from Mexico." *Id.* at 18:9. Agent Fiorita asked for Mr. Broca-Martinez's consent to search the 3219 Zacatecas St. residence, which Mr. Broca-Martinez gave both orally and in writing.

The Government concedes that Agent Fiorita did not advise Mr. Broca-Martinez of his *Miranda* rights at any point prior to or during this interview, but contends that it was not necessary to provide the *Miranda* warnings because Mr. Broca-Martinez was not "in custody" within the meaning of *Miranda* at that time. The Defendant argues that he was in *Miranda* custody when Agent Fiorita was questioning him and that Agent Fiorita's failure to provide the *Miranda* warnings therefore constitutes a *Miranda* violation.

### III.   LEGAL STANDARD

*Miranda* warnings must be administered prior to "custodial interrogation." *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc) (quoting *Miranda v. Arizona*, 384

U.S. 436, 479 (1966)). "A suspect is . . . 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* at 596. Because Mr. Broca-Martinez had not been formally arrested at the time Agent Fiorita questioned him, *see* Hr'g Tr. 40:4-11, the Court must apply this reasonable-person standard. Whether a suspect is "in custody" under this standard "is an objective inquiry," *J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2402 (U.S. 2011), that "depends on the 'totality of circumstances,'" *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). The Fifth Circuit has identified several important factors to consider:

> (1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave.

*United States v. Coleman*, 610 F. App'x 347, 353 (5th Cir. 2015); *see also United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015). The restraint on a suspect's freedom that is necessary to establish custody for purposes of *Miranda* is greater than that necessary for a seizure under the Fourth Amendment. *Id.* at 774. "The critical difference between the two concepts . . . is that custody arises only if the restraint on freedom is a certain degree—the degree associated with formal arrest." *Bengivenga*, 845 F.2d at 597-98.

## IV. DISCUSSION

It is well established that ordinary traffic stops do not place a person "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 437-39 (1984) (finding brevity, spontaneity, and public nature of normal traffic stop, and small number of officers involved, renders stop non-custodial). In the course of a traffic stop, the officer may order the detainee out

of the car and "ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id.* at 439. This is not to say, however, that routine traffic stops cannot become custodial. "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id.* at 440. The issue here, then, is whether the circumstances of Officer Leal and Agent Fiorita's encounter with Mr. Broca-Martinez were sufficient to transform the traffic stop into a custodial situation within the meaning of *Miranda*.

In *United States v. Coleman*, the Fifth Circuit held that a traffic stop lasting thirty minutes did not "meaningfully advance[] beyond what is typical during an ordinary traffic stop." 610 F. App'x at 353. In that case, "[t]he stop was conducted on the side of a public roadway, where a traffic stop is normally conducted; [the officer] never engaged [the suspect] in specific, lengthy or accusatory questioning about any suspected offense; and [the suspect] was either sitting in his car or standing outside it, unrestrained, during the entire stop." *Id.* There are two facts that might distinguish *Coleman* from the instant case: first, Mr. Broca-Martinez's property was confiscated prior to his interview with Agent Fiorita, and, second, Mr. Broca-Martinez was placed in the backseat of a police car, both prior to and during the interview.

That Officer Leal seized Mr. Broca-Martinez's cell phone and currency certainly weighs in favor of custody, but not heavily so. Courts have repeatedly found that being questioned after one's money and/or cell phone has been seized "did not transform the situation into a custodial encounter." *United States v. Brome*, No. 11-CR-6089, 2012 WL 4490664, at *6 (W.D.N.Y. Sept. 5, 2012) *report and recommendation adopted*, No. 11-CR-6089, 2012 WL 4481438 (W.D.N.Y. Sept. 27, 2012); *see also, e.g., Norman v. Stephens*, No. CIV.A. H-13-0624, 2013 WL 6498979,

5

at *18 (S.D. Tex. Dec. 11, 2013) (finding that defendant was not in *Miranda* custody even though officers had deprived defendant of his shoes, cell phone, and wallet); *United States v. Santillian*, No. 13 CR. 138 RWS, 2013 WL 4017167, at *12 (S.D.N.Y. Aug. 7, 2013) (finding that defendant was not in *Miranda* custody where defendant was "detained for approximately seventeen minutes, he had been questioned by [officers], patted-down and frisked, had his phone, wallet and identification removed, and was in the backseat of the patrol car"). This was not a situation where the items found on Mr. Broca-Martinez were so immediately incriminating that their discovery would cause a reasonable person to believe that he was under arrest. Rather, Officer Leal found only a cell phone and currency, items that one would expect a person to be carrying in his pockets. *Cf. United States v. Alcantara*, No. 09 CR 231(NRB), 2009 WL 4756491, at *9 (S.D.N.Y. Dec. 2, 2009) (holding that defendant was in *Miranda* custody where officers discovered cocaine during a weapons pat-down following a traffic stop).

While the Court can give only little weight to the seizure of Mr. Broca-Martinez's money and cell phone, the fact that he was detained in the backseat of Officer Leal's squad car constitutes a much more significant restraint on his freedom. Upon learning from Mr. Broca-Martinez that he was not legally in the United States, Officer Leal placed him in the backseat of his squad car and shut the door. Mr. Broca-Martinez sat there for three minutes before Agent Fiorita arrived and initiated questioning. Hr'g Tr. 42:6-10; *see also* Doc. No. 41 at 1. During this time Mr. Broca-Martinez was clearly not free to leave; in fact, he was not even able to leave because the back doors of the squad car cannot be opened from the inside. Hr'g Tr. 42:6-10. As Agent Fiorita interviewed Mr. Broca-Martinez, he remained seated in the backseat, with the door open and Agent Fiorita standing next to him outside.

6

The detention of a suspect in the backseat of a police car, for any duration of time, is not something that transpires in the course of a routine traffic stop. Had the circumstances of Mr. Broca-Martinez's detention been even slightly different, his situation might have crossed over into *Miranda* custody. However, there are a number of facts that mitigate the severity of the restriction that the detention placed on his liberty. First of all, the length of time that Mr. Broca-Martinez spent in the backseat of Officer Leal's vehicle was brief: three minutes waiting for Agent Fiorita to arrive and less than five minutes undergoing questioning. Mr. Broca-Martinez was also allowed to exit the vehicle, as he got out from the backseat in order to sign the consent-to-search form. Hr'g Tr. 19:18-24. *See United States v. Hampton*, No. 3:07-CR-113, 2008 WL 1826059, at *18 (E.D. Tenn. Apr. 23, 2008) (the fact that the "defendant exited the patrol car during his conversation with [the law enforcement officer] [is] further evidence of a lack of restraint on [d]efendant's freedom of movement."). Moreover, Officer Leal's reason for further detaining Mr. Broca-Martinez was investigatory. Mr. Broca-Martinez was placed in the back of the patrol car because his statement to Officer Leal that he was in the United States illegally gave Officer Leal reasonable suspicion to believe that criminal activity other than the traffic offense was afoot and that it would be necessary to hold Mr. Broca-Martinez until HSI agents could arrive and confirm or dispel his suspicion.[2] Hr'g Tr. 39:25; *id.* at 60:1-17. As in *Coleman*, "the length [of the detention] was extended primarily because reasonable suspicion had arisen

---

[2] In determining whether a detention subsequent to a traffic stop remains a valid *Terry* stop, the Fifth Circuit has held: "[W]e do not find that a detention during a valid traffic stop violates the detainees' Fourth Amendment rights where it exceeds the amount of time needed to investigate the traffic infraction that initially caused the stop, so long as . . . the facts that emerge during the police officer's investigation of the original offense create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot." *United States v. Pack*, 612 F.3d 341, 358 (5th Cir.) *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010); *see also id.* (stating other factors to consider).

regarding a different offense . . . and not because of any extending questioning." 610 F. App'x at 353.

Perhaps most significantly, Mr. Broca-Martinez was never handcuffed, nor was he physically restrained in any other way. The "use of physical restraints on a suspect is a key factor in determining whether the defendant's freedom of movement was restricted to the degree associated with a formal arrest." *United States v. Muegge*, 225 F.3d 1267, 1271 (11th Cir. 2000) (finding defendant who "was interrogated in a secure facility" was not in custody for *Miranda* purposes because he was never "placed under arrest or physically restrained in any significant way"). Whether the suspect was placed in physical restraints is a factor that has been given particular importance in cases where, as here, the suspect was held in the back of a police car. *Compare United States v. Ross*, 400 F. Supp. 2d 939, 945 (W.D. Tex. 2005) (finding defendant was not in *Miranda* custody where he was detained after a traffic violation until Border Patrol agents arrived and "was placed in the patrol car but was never handcuffed or removed from the scene") *with United States v. Duheart*, No. CRIM.A. 11-67-BAJ, 2011 WL 5854942, at *6 (M.D. La. Nov. 21, 2011) (finding defendant *was* in *Miranda* custody where "[d]efendant was handcuffed, placed in the backseat of a patrol car, and had his shoes removed"). In Mr. Broca-Martinez's case, this key factor is not present.

There is no doubt that, by the time Mr. Broca-Martinez was questioned by Agent Fiorita, his freedom had been curtailed to a significant degree. But the degree of restraint "which the law associates with formal arrest" is very high indeed. *Bengivenga*, 845 F.2d 593, 596. Considering the totality of the circumstances surrounding the statements that Mr. Broca-Martinez made to

Agent Fiorita, the Court cannot find that he was "in custody" for purposes of *Miranda* at that time.[3]

## V. CONCLUSION

Because the Court finds that Defendant was not "in custody" when he was questioned, Defendant's Motion to Suppress Statement (Doc. No. 25) is **DENIED**.[4]

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on the 11th of February, 2016.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[3] The Court's conclusion pertains only to the interrogation that occurred immediately following the traffic stop, as Mr. Broca-Martinez sat in Officer Leal's squad car. After Agent Fiorita finished his questioning and had obtained Mr. Broca-Martinez's consent to search the residence at 3219 Zacatecas St., Mr. Broca-Martinez was driven to the residence where he observed the officers conduct the search. Hr'g Tr. 19:5-14. At the conclusion of the search (in which officers found other undocumented immigrants in the residence), Mr. Broca-Martinez was formally arrested. If officers interrogated Mr. Broca-Martinez after completing the consent search but prior to formally arresting him, it is very possible that such an interrogation would have been custodial. But the Court need not decide whether this later interval constituted custody because Defendant's Motion to Suppress challenged only the questioning that Agent Fiorita performed when he arrived at the traffic stop. *See* Def.'s Supp. Brief 5 (Doc. No. 40).

[4] In Defendant's Supplemental Brief (Doc. No. 40), Defendant argues that, even if he was not in custody for purposes of *Miranda*, his incriminating statements and his consent to search the residence were obtained in violation of the Due Process Clause because he did not offer them voluntarily. It is true that even non-custodial confessions and consents can be deemed involuntary. *See Beckwith v. United States*, 425 U.S. 341, 347-48 (1976) (noting that non-custodial involuntary statements can occur where "'the behavior of . . . law enforcement officials was such as to overbear [the suspect's] will to resist and bring about confessions not freely self-determined'") (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)). However, the Court does not find that the circumstances of Mr. Broca-Martinez's questioning rise to the level of coerciveness necessary to exclude his statements or his consent on that basis.